UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FELIX'S RESTAURANT, INC.                                    CIVIL ACTION
d/b/a FELIX'S RESTAURANT

VERSUS                                                                NO.  07-4290

ASPEN SPECIALTY INSURANCE COMPANY                SECTION "N" (5)

<u>**ORDER AND REASONS**</u>

Before the Court is Aspen Specialty Insurance Company's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (Rec. Doc. 25), which is opposed.

**I.       BACKGROUND**

Felix's Restaurant, Inc. ("FRI") operates an oyster bar and restaurant in the French Quarter of New Orleans.  FRI's restaurant was damaged when Hurricane Katrina made landfall on or about August 29, 2005. Before Katrina, FRI operated this restaurant out of three separate, but connected buildings: 208-210 Bourbon Street (the "Bourbon Location"), 733 Iberville Street and 739 Iberville Street (collectively, the "Iberville Location").  FRI's restaurant was insured under a commercial property insurance policy issued by Aspen Specialty Insurance Company ("Aspen") .

**II.      SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations

2

omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party *could or would prove the necessary facts.*" *Id. (emphasis in original) (citing Lujan* v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### III.    Aspen's Motion for Summary Judgment

First, Aspen requests that summary judgment be granted in its favor dismissing all of FRI's claims on the ground that it made several significant and material misrepresentations to Aspen in when it submitted a Sworn Statement in Proof of Loss. Aspen maintains that such material misrepresentations serve to void all portions of the policy under which FRI has asserted claims. After considering the memoranda of the parties and the applicable law, the Court finds that there are

genuine issues of material fact,  relating to (1) whether FRI made material misrepresentations in its sworn proof of loss, and (2) if so, whether FRI intended to deceive Aspen in making such misrepresentations, which preclude summary judgment.

Alternatively, Aspen requests partial summary judgment: (1) dismissing FRI's claims for penalties and attorneys fees under Louisiana's "bad faith" statutes (La. R.S. 22:658 and La. R.S. 22:1220); (2) dismissing FRI's claim for electronic data loss; (3) ruling that the maximum amount of coverage for loss of business income that could possibly be available to FRI for the period running from March 1, 2006 through February 1, 2007 is $126,068.00; and (4) ruling that the maximum amount of building property damage coverage that could possibly be remaining for repairs to the Iberville Location is $653,468.94.

### A.    FRI's Claims for Penalties and Attorneys Fees La. R.S. 22:658 and La. R.S. 22:1220

#### 1.    Legal Standards Applicable to FRI's bad faith claims under La. R.S. 22:658 and La. R.S. 22:1220

The Louisiana Supreme Court explained in *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1020-1021 (La. 2003):

> The conduct prohibited in LSA-R.S. 22:658(A)(1) is virtually identical to the conduct prohibited in LSA-R.S. 22:1220(B)(5): the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. FN7 *Calogero v. Safeway Insurance Company of Louisiana*, 99-1625, p. 7 (La.1/19/00), 753 So.2d 170, 174. The primary difference is the time periods allowed for payment. *Id.*  Furthermore, LSA-R.S. 22:658 and LSA-R.S. 22:1220 are penal in nature and must be strictly construed. *Hart v. Allstate Insurance Company*, 437 So.2d 823, 827 (La.1983).
>
> One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Id.* at 828. It logically follows from this burden

4

that a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer, is not entitled to a finding that the insurer was arbitrary or capricious. *Id.; see also McClendon v. Economy Fire & Casualty Insurance Company*, 98-1537, p. 5 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 730 (Plaintiff's failure to provide insurer with information to confirm that the other driver was under insured barred finding of arbitrary or capricious failure to tender within 60 days.) The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. *Block v. St. Paul Fire & Marine Ins. Co.*, 32,306, p. 7 (La.App. 2 Cir. 9/22/99), 742 So.2d 746, 751. The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767, 771* (La.1980), on rehearing. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist. *Block*, 32,306 at 8, 742 So.2d at 752.

Both LSA-R.S. 22:658 and LSA-R.S. 22:1220 require proof that the insurer was "arbitrary, capricious, or without probable cause," FN8 a phrase that is synonymous with "vexatious." *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993). This court has noted that "vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. *Id.*, citing COUCH ON INSURANCE 2d, § 58:70. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id.*

Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action . . . . *See Scott v. Insurance Company of North America,* 485 So.2d 50, 52 (La.1986).

FN7. We note the jurisprudence generally uses the terms "arbitrary and capricious" despite the fact the statutory provisions use the disjunctive "arbitrary, capricious, or without probable cause." Regardless, the definitions of the terms "arbitrary" and "capricious" are almost indistinguishable from each other. An "arbitrary" act is an act "based on random choice or personal whim, rather than any reason or system." THE NEW OXFORD AMERICAN DICTIONARY 80 (Elizabeth J. Jewell & Frank Abate eds., 2001). "Capricious" action is "given to sudden and unaccountable changes of behavior." *Id.* at 256. A judicial "decision

founded on prejudice or preference rather than on reason or fact" is often termed "arbitrary and capricious." BLACK'S LAW DICTIONARY 100 (7th ed.1999).

FN8. The same language is used in the workers' compensation law. For example, reasonable attorney fees are awarded as a penalty when an employer discontinues payment of benefits if the "discontinuance is found to be arbitrary, capricious, or without probable cause." LSA-R.S. 23:1201.2.  In that context, this court has defined arbitrary and capricious behavior as "willful and unreasonable action, without consideration and regard for the facts and circumstances presented." *J.E. Merit Constructors, Inc. v. Hickman*, 00-0943, p. 5 (La.1/17/01), 776 So.2d 435, 437.


   2.    **Analysis**

FRI first notified Aspen of its claim on September 2, 2005 (Rec. Doc. 35, p. 2). Thereafter, on September 30, 2005, an independent adjuster retained by Aspen, Jerry Hodges ("Hodges") of Custard Insurance Agency, first inspected FRI's restaurant (Exhibit F to Rec. Doc. 25, p. 1 of 29).  Thus, it appears to the Court that the adjustment of FRI's claim was initiated timely.

It is also clear to the Court that FRI undertook several construction projects at the Iberville Location of the restaurant that were necessitated by FRI's decision to terminate its lease at the Bourbon Location.  John Rotonti, on behalf of FRI, admitted that FRI's termination of the lease of the Bourbon Location  was a business decision based upon concerns that the post-Katrina customer market would not rebound to pre-Katrina levels. (Exhibit K to Rec. Doc. 39, pp. 169-170). These additional construction tasks, which were necessitated by FRI's business decision to terminate the Bourbon Location lease, escalated FRI's construction costs, including additional plumbing and electrical work to renovate a previously non-used portion of the Iberville Location into the main kitchen/dishwashing area, as well as to relocate the women's bathroom into the Iberville Location. (Exhibit J to Rec. Doc. 39, pp. 115-16). Rotonti also testified that because the

Bourbon Location contained one-third of the restaurant's seating capacity, he would have expected a decrease in his overall business income as a result of this decreased capacity. (Exhibit K to Rec. Doc. 39, pp.168-69, 192).   It should also be noted that neither the estimates of Hodges (Exhibit F to Rec. Doc. 25) nor FRI's own contractor, Diamond K (Exhibit I to Rec. Doc. 39), include expenses for relocating the kitchen, the dishwashing area, and a women's bathroom from the Bourbon Location to the Iberville Location. Indeed, Diamond K advised Hodges that the scope of the work, as originally envisioned (i.e., without taking into account the additional construction projects necessitated by FRI's decision to cancel the lease of the Bourbon Location), should have been completed in six months. (Exhibit G to Rec. Doc. 25, p. 2 of 3).

Also, once Aspen's independently retained forensic CPA, Jean Lehman ("Lehman"), was advised of FRI's decision to terminate the Bourbon Location lease, she advised Aspen that it overpaid FRI for the six-month period of restoration. (Exhibit K to Rec. Doc. 25).  She also advised that FRI's BI loss over the six-month period of restoration could be as little as $156,000.00, although she ultimately left the final determination of business income loss to Aspen, based on the issues outlined in her report. (Exhibit K to Rec. Doc. 25, p. 4 of 12).

As for FRI's claim for additional building damages to the Iberville Location, Aspen retained a structural engineering firm, Applied Building Sciences, Inc. ("ABS"), to inspect the premises. ABS concluded that FRI's claims for additional damages were without merit because many of the conditions observed at the Iberville Location pre-existed Hurricane Katrina. (Exhibit I to Rec. Doc. 25).

The Court agrees with Aspen that although it did set its reserves for FRI's claims at $1,000,000.00, that fact has no bearing on whether more funds are necessarily owed to FRI, as reserves are contingent liabilities and insurers do not rely on reserves in computing any tender to the insured.

*Arrow Trucking Co. v. Continental Ins. Co.,* 465 So. 2d 691, 696 (La. 1985).

Also, as for FRI's claims that Aspen has refused in bad faith to pay an additional $35,000.00 in depreciation holdback and additional proceeds for increased construction costs, the Court finds that even if FRI could establish that it spent the depreciation holdback while making the actual repairs outlined in Hodges' and Diamond K's estimates (and not on additional construction projects necessitated by FRI's termination of the Bourbon Location lease), the amount of the holdback would be subsumed by Aspen's BI overpayment.[1]

Given the foregoing, the Court finds that a genuine good faith dispute exists with respect to the total amount due FRI under the Policy. The Court further finds that FRI has not presented evidence demonstrating the existence of genuine issues of material fact relative to its assertion that Aspen has acted arbitrarily and capriciously for purposes of La. R.S. 22:658 and La. R.S. 22:1220. Rather, a reasonable and legitimate disagreement unquestionably exists with respect to the scope and extent of both FRI's claim for additional BI damages, as well as for additional building damages at the Iberville Location.  Thus, summary judgment is granted in favor of Aspen on this issue.  FRI's claim for bad faith damages is dismissed.

**B.      FRI's Claim for Electronic Data Loss**

Aspen requests that this Court grant summary judgment in its favor and dismiss FRI's electronic data loss claim. It does not appear to the Court that FRI specifically opposed Aspen's argument in its opposition to Aspen's motion for summary judgment.  Further, it seems clear to the

---

[1]      Aspen initially advanced FRI $100,000 towards its business income loss claim. (Exhibit J to Rec. Doc. 25).  After receiving its CPA's admittedly uncertain estimate that FRI's business income loss could be as much as $488,592 (or $388,592 when accounting for the initial advancement of $100,000), Aspen paid FRI $343,592 ($388,592 less $45,000 as only $5000 of the $50,000 deductible had been applied to date).  (*Id.*) While Aspen initially deducted $45,000.00 of the Policy's $50,000.00 deductible from its BI payment to FRI, Aspen's CPA later informed it that it overpaid FRI for its BI losses by as much as $287,000 ($488,592 less $156,000).

Court that FRI may not recover for electronic data loss.  The insurance policy at issue contains an "Electronic Data Endorsement," which specifically excludes all "loss, damage, destruction, distortion, erasure, corruption or alternation of ELECTRONIC DATA from any cause whatsoever" except if "caused by [a] listed peril." (Exhibit A to Rec. Doc. 25, pp. 43 of 50). The listed perils are "Fire," and "Explosion" only, neither of which occurred in this case.  Because FRI's loss of electronic data did not result from fire and/or explosion, FRI is not entitled to coverage for electronic data loss under the insurance policy at issue here.

**C.  Maximum Amount of Coverage for Loss of Business Income and for Building Property Damage**

**1.  Loss of Business Income**

The Policy contains the following limit per occurrence: $3,180,000.00.  (Exhibit A to Rec. Doc. 25, p. 2 of 50).  The Policy also states that this limit is subject to sub-limits, which are defined in a schedule " as submitted and on file."  (*Id.*). The application submitted by FRI in this case reveals that FRI requested a BI limit of $200,000 for the Iberville Location and $800,000 for the Bourbon Location. (See Exhibit N to Rec. Doc. 25,  Pp. 3-4 of 4).  Aspen claims this application is the "schedule" to which the policy refers.

As explained herein, Aspen has already paid FRI BI payments totaling $443,592, which it claims covers FRI's loss from August 29, 2005 through the end of February 2006. Thus, all remaining BI loss sought by FRI necessarily occurred during a period beginning on March 1, 2006 and moving forward.  Further, because FRI terminated the Bourbon Location's lease effective January 2006 (Exhibit M to Rec. Doc. 25, pp. 65-66), all of FRI's alleged BI loss from January 2006 and thereafter must have occurred at the Iberville Location only, as the Policy excludes coverage for BI losses caused by the termination of any lease.  (Exhibit A to Rec. Doc. 25, p. 34 of 50).  Aspen argues

9

that because FRI already received $73,932[2] for February 2006, a month during which the Bourbon

Location's lease had already been terminated, the $73,932 Plaintiff received for February 2006's BI

must be deducted from the $200,000.00 limit on Iberville Location BI. This leaves FRI with a

maximum of $126,068.00 left to recover under the Policy for BI.

    In opposition, FRI claims that summary judgment should be denied because the Policy is

ambiguous and any sub-limitation is void under Louisiana's Entire Contract Policy Statute, La. R.S.

22:628.[3]  FRI also asserts that Aspen cannot use its January 18, 2005 application for insurance as the

"schedule of values" to limit coverage because it was not attached to the policy.  FRI claims that the

January 18, 2005 application was first produced by Aspen at the time of the filing of

its motion for summary judgment.  FRI notes that the policy provided to FRI's broker/agent in January

of 2005 did not have a commercial insurance application form or a "schedule of values" attached to

it. (Exhibit 24 to Rec. Doc. 35).  FRI also notes that Aspen's original Rule 26 Disclosures did not

include the January 18, 2005 commercial insurance application. Instead, Aspen produced an Accord

commercial insurance application – dated December 8, 2004 showing the carrier as General Star

Indemnity Company. (Exhibit 23 to Rec. Doc. 35).  FRI attempts to create a genuine issue of material

fact by noting that the two applications have different dates and have reversed property value and

business income loss amounts for the Bourbon and Iberville locations.  FRI takes issue with the fact

---

[2]    Aspen reached this number by dividing its total BI payment of $443,592.00 by the six-month payment period.

[3]    This statute provides, in pertinent part;

> No agreement in conflict with, modifying, or extending the coverage of any
> contract of insurance shall be valid unless it is in writing and physically made a
> part of the policy or other written evidence of insurance, or it is incorporated in
> the policy or other written evidence of insurance by specific reference to another
> policy or written evidence of insurance.

that Aspen argues that FRI's claims are limited by the substantially lower amounts listed in the January 18, 2005 application.

FRI also finds it suspicious that Aspen is arguing for the use of the January 18, 2005 application when it issued the policy on January 3, 2005, two weeks *before* the January 18, 2005 application could have been considered by Aspen.  (Exhibit 24 to Rec. Doc. 35, p. 1).  Thus, FRI asserts that there exists an issue of material fact as to whether the January 18, 2005 application for commercial insurance constitutes the "schedule of values."

The Court agrees that a material issue of fact exists as to whether the January 18, 2005 application is the "schedule" of values referenced in the Policy.  First, the application was completed after the policy was issued.  Second, the Court has not been presented with any evidence that Aspen ordinarily uses a policy application to serve as the "schedule" referenced in other similar, scheduled policies.  Third, FRI has pointed the Court to a January 9, 2006 email from one Aspen employee to another inquiring about the location of the "schedule of values" as one is not located in the Policy (Exhibit 25 to Rec. Doc. 35).  Thus, the Court finds that there are genuine issues of material fact which preclude summary judgment on this issue.

### 2.    Building Property Damage

FRI requested a $900,000.00 limit for building and personal property damage for the Iberville Location and a limit of $1,280,000.00 in building and personal property coverage for the Bourbon Location.  (See Exhibit N to Rec. Doc. 25,  Pp. 3-4 of 4).  In Plaintiff's Sworn Statement in Proof of Loss regarding its building property damage claim, FRI alleges $1,209,694.60 in damages to the Iberville Location, and submits Earl Carr's estimate of June 26, 2008 in support. (Exhibit B to Rec. Doc. 25; Exhibit C to Rec. Doc. 25). FRI  has already received $246,531.06 toward repairs to the

Iberville Location.  (Exhibit B to Rec. Doc. 25, p. 1 of 3). According to FRI's Statement in proof of

Loss, FRI claims to be entitled to an additional payment of $963,163.60. (Id.).  However, Aspen asserts

that FRI's $900,000.00 sub-limit for building damage to the Iberville Location less the $246,531.06

that FRI has already been paid, reveals that the maximum amount in additional proceeds recoverable

for building policy damage is $653,468.94.

This Court denies summary judgment on this issue for the same reasons it denied summary

judgment on the issue of the maximum amount of coverage for loss of business income.

**IV.     CONCLUSION**

**IT IS ORDERED** that **Aspen Specialty Insurance Company's Motion for Summary**

**Judgment or, Alternatively, Partial Summary Judgment (Rec. Doc. 25)** is **GRANTED IN PART**

**AND DENIED IN PART**, as set forth herein.

New Orleans, Louisiana, this 17th day of October, 2008.

**KURT D. ENGELHARDT**
**United States District Judge**

12